UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00212-GNS-HBB

KY CLOSEOUTS, LLC PLAINTIFF

v.

EAGLE TRACE, INC. d/b/a
THE BARGAIN WAREHOUSE, et al. DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 37), Defendant's Motion for Summary Judgment (DN 56), and Plaintiff's Cross-Motion for Summary Judgment (DN 62). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS AND CLAIMS

This action arises from a business transaction between Plaintiff KY Closeouts, LLC ("KYC") and Defendant Eagle Trace, Inc. d/b/a Bargain Warehouse ("BW") in the midst of the COVID-19 pandemic.[1] Following the pandemic's onset, there was a great need for personal protective equipment ("PPE") for healthcare workers treating infected persons. As part of the transaction, BW advertised and solicited KYC's business for which BW would act as a broker to obtain PPE, including nitrile gloves, for use by KYC's customers in the healthcare industry. (Bryant Decl. ¶¶ 4-8, DN 62-1; Bryant Decl. Ex. B, DN 62-2). According to KYC, BW represented that it could obtain up to fifty million nitrile gloves per week from its sources around the world for delivery in the United States. (Bryant Decl. ¶ 8; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 2, 4, DN 63-2; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. D, at 2-4, DN 63-4). In an email

---

[1] KYC alleges that Defendant Gary Bingham ("Bingham") "serves as the principal, president, CEO and at least as the registered agent of BW." (Compl. ¶ 5, DN 1).

on June 11, 2020, to Rebecca Bryant ("Bryant") at KYC, Bingham stated that he could fulfill KYC's order with delivery to occur within three to five days. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 2).

On or about June 12, 2020, the parties entered into an agreement in which KYC would purchase 90,000 boxes of nitrile gloves set to arrive at BW's warehouse between June 16 and 19, 2020. (Bryant Decl. ¶¶ 11-12; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. G, at 2, DN 63-7; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. D, at 2-3; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. L, at 2, DN 63-12). On that same day, BW sent an invoice in the amount of $941,220, and KYC wired the sum of $900,000 to BW. (Bryant Decl. ¶ 11; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. E, at 2, DN 63-5; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. F, at 2, DN 63-6). To acquire the PPE, BW then wired $650,000 of the funds received from KYC and an additional $70,000 to a supplier in Italy. (Bingham Dep. 190:6-14, DN 37-8).

Within days, KYC became concerned about whether BW was going to be able to fulfill the order as promised. (Bryant Decl. ¶¶ 17). In an email to Bryant sent on June 13, 2020, Bingham stated:

> I understand your concerns and yes there is a several scams out there in this world. Fortunately for you and for me we are dealing with one of the most reputable companies in the business. I have done several multi[-]million dollar deals with them without a single issue. They are extremely large in the medical field and deal directly with the factories.

(Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 17). The parties continued to communicate about the order between June and December 2020. (Bryant Decl. ¶¶ 21-24; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. I,- DN 63-9; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. J, DN 63-10; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. K, DN 63-11; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. L, DN 63-12; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. M, DN 63-13; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. N, DN 63-14).

BW repeatedly insisted that its efforts to fulfill the order were stymied by third parties including its vendor in Italy. (Bryant Decl. ¶ 24). BW eventually refunded the sum of $250,000 to KYC, but the order has never been fulfilled by BW. (Bryant Decl. ¶ 25).

On December 22, 2020, KYC filed this action against BW and Bingham asserting claims for fraudulent misrepresentation, breach of contract, conversion, unjust enrichment, and breach of the duty of good faith and fair dealing, and it requested that the Court pierce BW's corporate veil to hold Bingham personally liable.[2] (Compl. ¶¶ 31-62). After the close of discovery, KYC and Bingham filed competing motions for summary judgment. (Pl.'s Mot. Partial Summ. J., DN 37; Def.'s Mot. Summ. J., DN 56). In addition, KYC filed a combined response and cross-motion for summary judgment to Bingham's motion. (Pl.'s Resp. Def.'s Mot. Summ. J. & Pl.'s Cross-Mot. Summ. J., DN 62).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the

---

[2] While KYC purports to assert a claim for punitive damages in Count VII of the Complaint, "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012) (citation omitted).

moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Choice of Law

To address the pending motions, the Court must determine whether Kentucky or South Carolina law applies to KYC's causes of action and requests for relief. Not surprisingly, the parties disagree; KYC contends Kentucky law applies, while BW contends South Carolina law applies. (Pl.'s Reply Mot. Partial Summ. J. 12-14, DN 61; Def.'s Resp. Pl.'s Mot. Partial. Summ. 3-5, DN 49 [hereinafter BW's Resp.]).

"Federal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because KYC's claims arise under both contract and tort law, the Court must conduct a separate choice of law analysis for

each type of claim. *See Saleba v Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). In addition, the Court must determine what law applies to KYC's request to pierce BW's corporate veil to hold Bingham personally liable.

**1. *Breach of Contract***

BW's invoice provides that "[i]t is hereby agreed that the laws of the State of SOUTH CAROLINA, County of HORRY, will govern all matters concerning the sale." (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. E, at 2). he Sixth Circuit has noted, however, "Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 393 (6th Cir. 2000). "Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017); *see also Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230-31 (6th Cir. 1997) ("Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons.' In other words, 'if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied.'" (alteration in original) (internal citation omitted) (citation omitted)); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible*. . . . Indeed, the Kentucky Supreme Court has recently gone much further and held that Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary, even if the parties have voluntarily agreed to apply the law of a different state. Thus, it is apparent

that Kentucky applies its own law unless there are overwhelming interests to the contrary." (internal citations omitted)).

Kentucky courts apply the "most significant contacts" test found in the Section 188 of the Restatement (Second) of Conflict of Law in contractual disputes. *See Saleba*, 300 S.W.3d at 181 (citations omitted). Under this test, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 188(1). In making that determination, courts are to consider:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 188(2); *see State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878-79 (Ky. 2013) (applying the Section 188(2) factors).

Here, BW is a South Carolina corporation with its principal place of business in that state. (Compl. ¶ 3). KYC is a Kentucky limited liability company with its principal place of business in this state. (Compl. ¶ 2). BW reached out to KYC in Kentucky to solicit its business. (Bryant Decl. ¶ 8). The email messages and texts exchanged were sent by BW and KYC from their respective business locations, which led to the formation of the agreement to purchase the PPE. Under that agreement, BW would act as a broker for KYC to obtain the PPE from vendors outside of the United States, which KYC intended to sell to its customers in Kentucky. KYC wired $900,000 from its bank account in Kentucky to BW. Under these circumstances,

Kentucky has the most significant relationship to this dispute—especially in light of Kentucky's preference to apply its own law.

**2. *Tort & Equitable Claims***

KYC has also asserted tort and equitable claims. (Compl. ¶¶ 31-38, 44-57). In conducting the choice of law analysis for tort claims, Kentucky courts apply the rule "that if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972). As discussed above, Kentucky has significant contacts with this dispute, and a Kentucky court would apply Kentucky law to KYC's tort claims.

A sister court has applied both the most significant relationship and the significant contacts test to determine the appropriate choice of law regarding unjust enrichment claims. *See MegaCorp Logistics, LLC v. Turvo, Inc.*, No. 17-109-DLB-CJS, 2018 WL 1020118, at *7-8 (E.D. Ky. Feb. 22, 2018); *Veolia Es Special Servs., Inc. v. Techsol Chem. Co.*, No. 0:06-CV-136-HRW, 2007 WL 9751881, at *3 (E.D. Ky. Mar. 9, 2007). Regardless of which test applies, a Kentucky court would apply Kentucky law to an unjust enrichment claim for the reasons discussed above.

**3. *Piercing the Corporate Veil***

Lastly, in Count VI of the Complaint, KYC seeks to pierce BW's corporate veil and hold Bingham personally liable. (Comp. ¶¶ 58-62). From the Complaint itself, it is not entirely clear whether KYC is seeking this form of relief against Bingham because of his role as a shareholder, a director, or an officer.

As to shareholder liability, Kentucky courts apply Section 307 of the Restatement (Second) of Conflict of Laws, which provides that "[t]he local law of the state of incorporation

will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." Restatement (Second) of Conflict of Laws § 307; *see Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. App. 2012) (applying Section 307); *Grayiel v. AIO Holdings, LLC*, No. 3:15-CV-821-CHB, 2022 WL 18228300, at *45 (W.D. Ky. Dec. 29, 2022) (noting that Kentucky applies Section 307). Because BW is incorporated in South Carolina, this Court will apply that forum's law in addressing whether KYC can pierce the corporate veil and hold Bingham liable for any of its claims as a shareholder.

To the extent that KYC seeks to hold Bingham liable as a director or an officer, it is not clear what choice of law rule Kentucky courts would apply. In the absence of authority, this Court will apply Section 309 of the Restatement (Second) of Conflict of Laws, which provides:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309. As discussed above, Section 6—coupled with Section 188 and the facts discussed above—dictates that a Kentucky court would apply Kentucky law to any request to pierce the corporate veil to hold a director or officer personally liable.

**B. <u>Motions for Summary Judgment</u>**

KYC and Bingham have filed dueling motions for summary judgment. KYC seeks summary judgment against Defendants for breach of contract, fraudulent misrepresentation, and conversion claims. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 18-26, DN 37-1). Bingham seeks summary judgment on all claims asserted against him and the dismissal of KYC's request for

punitive damages and to pierce the corporate veil of BW to hold him personally liable. (Def.'s Mem. Supp. Mot. Summ. J. 1-16, DN 56-1). In addition, KYC's cross-motion seeks summary judgment against Bingham to the extent that he seeks summary judgment against KYC. (Pl.'s Resp. Def.'s Mot. Summ. J. & Pl.'s Cross-Mot. Summ. J. 17-24).

**1. *Breach of Contract***

In its motion, KYC moves for summary judgment on its breach of contract claim against both Defendants. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 18-23). Bingham moves for summary judgment on this claim to the extent that KYC seeks to hold him liable for the contract between KYC and BW. (Def.'s Mem. Supp. Mot. Summ. J. 12).

To prevail on a claim for breach of contract, a plaintiff must "1) establish the existence of a contract, 2) prove a breach of that contract, and 3) show damages flowing from the breach." *House v. Players' Dugout, Inc.*, 440 F. Supp. 3d 673, 682 (W.D. Ky. 2020) (citing *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009)). Because this claim is being asserted against a party and a non-party to the agreement, each defendant is addressed separately.

**a. BW**

The first element requires the existence of a valid contract. As this Court has explained, the requirements of a valid contract under Kentucky law are as follows:

> "An enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." While every possible term need not be defined, the agreement must set forth the "essential terms" of the deal. "Mutuality of obligations is an essential element of a contract, and if one party is not bound, neither is bound."

*C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 343 (W.D. Ky. 2012) (internal citations omitted) (citation omitted). There appears to be no dispute that a contract existed

between KYC and BW for the purchase of PPE. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 19; BW's Resp. 2). As part of that agreement, KYC wired the sum of $900,000 to BW. (Pl.'s Mot. Partial Summ. J. Ex. 1, at 1-2, DN 37-2; Pl.'s Mot. Partial Summ. J. Ex. 3, at 2, DN 37-4).

KYC must also prove a breach of that contract by BW. BW asserts that it worked diligently to procure the PPE and sent most of the funds from KYC to its Italian supply broker. (Bingham Aff. ¶¶ 4, 6, 10, 13, 16, 18, 22, DN 49-1; BW's Resp. 5-11). After recognizing that the delivery would be delayed, BW contends that it has worked to obtain either the PPE or a refund of the money sent to the Italian supplier, which was unsuccessful. (Bingham Aff. ¶¶ 6, 8, 10, 12-13, 16). BW blames others and the pandemic as preventing its performance under the contract, and it emphasizes that no promise was made about a delivery date. (Bingham Aff. ¶¶ 6, 9, 18). Nevertheless, BW has not provided the PPE to KYC in accordance with the agreement.

While it appears the parties' agreement did not contain a specific delivery date, the U.C.C.,[3] in relevant part, provides that "[t]he time for shipment or delivery . . . if not provided in this article or agreed upon shall be a reasonable time." KRS 355.2-309(1). BW initially stated that it would receive the PPE within days of the agreement, which would fill KYC's order for PPE needed by healthcare professionals in the middle of a global pandemic. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 2). BW still had not provided the PPE when KYC filed this lawsuit about seven months later. Accordingly, KYC has shown that BW breached the agreement by failing to deliver to KYC the PPE within a reasonable period of time.

---

[3] Article 2 of the U.C.C. applies to the sale of goods, which encompasses the PPE promised by BW. *See* KRS 355.2-102 ("Unless the context otherwise requires, this article applies to transactions in goods . . . ."); KRS 355.2-105 ("'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.").

Finally, KYC must prove damages resulting from Defendants' breach of the contract. As this Court has noted, "[g]eneral damages arise naturally from the breach itself or it can be supposed that the parties had these damages in mind as a probable result of breach." *Tex. Cap. Bank, N.A. v. First Am. Title Ins. Co.*, 822 F. Supp. 2d 678, 685 (W.D. Ky. 2011) (citing *U.S. Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 297 (Ky. 1933)).

It is clear from the record that BW has refunded $250,000 from the amount KYC wired. (Pl.'s Mot. Partial Summ. J. Ex. 1, at 2; Bingham Aff. ¶ 8). BW, however, still owes $650,000 plus any other recoverable damages resulting from BW's breach. Seeing as BW has not presented damages evidence to the Court and there could be issues of mitigation of damages, the Court will grant summary judgment on the breach of contract claim against BW as to liability only.

**b. Bingham**

KYC's attempt to hold Bingham liable for breach of contract as BW's agent is more problematic. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 21-23). It is undisputed that Bingham was not a party to the agreement between KYC and BW.

In urging that Bingham should be liable for BW's breach, KYC erroneously quotes *Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989), addressing an agent's personal liability for a *tort* committed on behalf of a corporation. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 21). As to a breach of contract claim asserted against an agent, the Kentucky Supreme Court has explained:

> [I]it is the universal law of agency that when an agent acts with authority in a transaction with a third party, and the third party is aware of the agency, the transaction is between the principal and the third party. *See* Restatement (Third) of Agency § 6.01 (2006). In such circumstances, the agent is not liable. *Id*. The agent of a business entity (or any agent, for that matter) can be personally liable only when he or she purports to be an agent but actually acts without authority.

*Pannell v. Shannon*, 425 S.W.3d 58, 81 (Ky. 2014). KYC does not cite any pertinent law imposing liability on an agent for the principal's breach of a contract in the context of a disclosed agency. Further, as discussed below, KYC waived any argument that it is entitled to pierce the corporate veil of BW, so KYC cannot rely on that theory to hold Bingham liable for BW's breach of contract. KYC's motion and cross-motion do not specifically address how Bingham can be liable as a non-party to the contract between KYC and BW. Accordingly, KYC's motions are denied on this basis.

Bingham also seeks summary judgment on this claim. As noted above, Bingham cannot be held liable for BW's breach of contract because he was a disclosed agent of the company as in *Pannell*. Accordingly, Bingham is entitled to summary judgment on the breach of contract claim.

**2. *Fraudulent Misrepresentation***

Both KYC and Bingham move for summary judgment on the fraudulent misrepresentation claim. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 23-24; Def.'s Mem. Supp. Mot. Summ. J. 6, 11-12). To prevail on this claim, a plaintiff must prove the following elements: "(a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury." *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. App. 1978) (citation omitted). "[A] misrepresentation, to be actionable, must concern an existing or a past fact, and not a future promise, prophecy, or opinion of a future event, unless declarant falsely represents his opinion of a future happening." *Steele v. Liberty Life Ins. Co.*, No. 2008-CA-000722-MR, 2009 WL 1562940, at *4 (Ky. App. June 5, 2009) (internal quotation marks omitted) (quoting *Ky. Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934)); *see also Mario's Pizzeria, Inc. v. Fed.*

*Sign & Signal Corp.*, 379 S.W.2d 736, 740 (Ky. 1964) (a claim for fraudulent misrepresentation "cannot be predicated upon statements which are promissory in their nature . . . or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured." (internal quotation marks omitted) (quoting 24 Am. Jur. *Fraud & Deceit* § 267)).

**a. BW**

The record reflects conflicting evidence as to whether BW made any fraudulent statement. BW asserts that it attempted to perform its contractual obligations but its performance was thwarted by others. (BW's Resp. 5-6). KYC contends to the contrary that evidence shows that BW schemed to defraud KYC. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 24). In particular, KYC says that Bingham falsely represented on behalf of BW that it "had a direct factory link and continuous delivery of PPE," which was false. (Pl.'s Mem. Supp. Partial Mot. Summ. J. 24). There are factual disputes as to BW's efforts and to the extent it made misrepresentations, which must be resolved by a jury at trial.

BW also urges that the fraudulent misrepresentation claim is precluded by the economic loss doctrine. (BW's Resp. 5). The Kentucky Supreme Court has explained this doctrine as follows:

> [W]hen a plaintiff may obtain complete relief for his contractual losses by means of compensatory damages under a breach of contract claim, even when the breach is motivated by malice and accomplished through fraud, he may not simultaneously recover punitive damages after being made whole on his contractual damages. However, a party who has been aggrieved by fraudulent or malicious conduct which results in damages that differ from the damages sustained by reason of the breach of contract, may assert an independent claim for such fraudulent or malicious conduct seeking whatever damages are appropriate for the independent claim, including punitive damages if otherwise authorized by law.

*Nami Res. Co. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018).

KYC does not address the economic loss doctrine in its reply. Because the economic loss doctrine would apply and KYC has failed to show that it is suffered damages differing from the breach of contract claim, it is not entitled to summary judgment on the fraudulent misrepresentation claim against BW. KYC's motion is denied on this basis.

**b. Bingham**

In his motion, Bingham seeks dismissal of KYC's fraudulent misrepresentation claim against him due to the economic loss doctrine. (Def.'s Mem. Supp. Mot. Summ. J. 6). Bingham does not address, however, whether the economic law doctrine extends to agents of a contracting party.

In its response and cross-motion, KYC avers that Kentucky law does not preclude liability for agents who commit torts. (Pl.'s Resp. Def.'s Mot. Summ. J. & Pl.'s Cross-Mot. Summ. J. 17). As the Kentucky Supreme Court noted in *Smith v. Isaacs*, an agent is personally liable for any tort committed on behalf of a corporation. *See Smith*, 777 S.W.2d at 914 (citing *Peters v. Frey*, 429 S.W.2d 847, 849 (Ky. 1968)). Construing the evidence in the proper light for Bingham's motion, KYC has presented evidence in the record from which a jury could find that Bingham made fraudulent misrepresentations which could potentially subject him to personal liability. That same evidence would preclude the entry of summary judgment for KYC on its cross-motion.

For these reasons, Bingham and KYC have failed to show that they are entitled to summary judgment on this claim. Their motions are denied on this basis.

3. ***Conversion***

Both KYC and Bingham move for summary judgment on the conversion claim. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 24-26; Def.'s Mem. Supp. Mot. Summ. J. 12). To prevail on a claim of conversion, a plaintiff must prove the following elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. App. 2005) (quoting *Ky. Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

In both the Complaint and its motion, KYC references BW and Bingham collectively as "Defendants," so it is unclear how KYC believes that Bingham is liable for conversion. KYC has also not identified evidence showing that all the elements are satisfied. Clearly, the parties dispute the intent element and whether Defendants caused KYC's loss. On the flip side, Bingham has similarly failed to show that he is entitled to summary judgment on this claim. Bingham does not cite any law or point to any undisputed facts to show that summary judgment is appropriate, and KYC has not shown that its cross-motion should be granted on this basis. Thus, the motions are denied as to this cause of action.

4. ***Unjust Enrichment***

In addition, Bingham moves for summary judgment on KYC's unjust enrichment claim. (Def.'s Mem. Supp. Mot. Summ. J. 2-3). To prevail on an unjust enrichment claim, the party seeking restitution must prove: "(1) [a] benefit conferred upon [another at the claimant's]

expense; (2) a resulting appreciation of benefit by [the other]; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citation omitted). While requesting summary judgment on this claim, Bingham otherwise fails to substantively address why his motion should be granted beyond denying KYC's factual allegations. Likewise, it is not clear how KYC is entitled to summary judgment based on its cross-motion at this stage. Both motions are denied as to this claim.

**5. *Breach of Implied Duty of Good Faith and Fair Dealing***

Bingham moves for summary judgment on KYC's claim for breach of the duty of good faith and fair dealing. (Def.'s Mem. Supp. Mot. Summ. J. 10-11). In general, "there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Tr. Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)). As reflected by the record, however, Bingham was not a party to the contract between KYC and BW. Accordingly, KYC fails to state a claim against Bingham for any alleged breach of this implied duty, and he is entitled to summary judgment on this claim, and KYC is not entitled to summary judgment against Bingham on this claim.

**6. *Piercing the Corporate Veil***

Bingham seeks summary judgment on KYC's request for the Court to grant the equitable remedy of piercing BW's corporate veil and holding him personally liable for BW's liabilities and actions.[4] (Def.'s Mem. Supp. Mot. Summ. J. 16-18). "The doctrine of '[p]iercing the

[4] In the Complaint, KYC alleges that "[u]pon information and belief, despite operating a bank account under its corporate name, conducting business, and collection funds, BW is not in good standing and is dissolved as a corporate entity with the South Carolina Secretary of State." (Compl. ¶ 4). According to the South Carolina Secretary of State's website, BW was administratively dissolved on May 8, 2019. *See Eagle Trace, Inc.*, S.C. Sec'y of State,

corporate veil is the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts.'" *King v. King*, 735 S.E.2d 551, 556 (S.C. Ct. App. 2012) (alteration in original) (citation omitted); *see Keats v. Cogan*, 614 B.R. 676, 684 (Bankr. W.D. Ky. 2020) ("Kentucky courts view veil piercing as an equitable remedy that allows a court to impose personal liability on otherwise immune corporate officers, directors and shareholders for the corporation's wrongful acts." (citation omitted)). As the party seeking to pierce the corporate veil, KYC has the burden of proof. *See Mid-S. Mgmt. Co. v. Sherwood Dev. Corp.*, 649 S.E.2d 135, 140 (S.C. Ct. App. 2007) (citation omitted); *Bear, Inc. v. Smith*, 303 S.W.3d 137, 148 (Ky. App. 2010).

In its response and cross-motion, KYC does not substantively address whether summary judgment is appropriate and makes only two passing references to this request for relief. (Pl.'s Resp. Def.'s Mot. Summ. J. & Pl.'s Cross-Mot. Summ. J. 1, 3). Because KYC has failed to address the substance of Bingham's arguments, it is unnecessary to analyze the relevant factors under either Kentucky or South Carolina law. *See Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)). The Court will grant summary judgment for Bingham on this request for equitable relief and deny KYC's cross-motion on this basis.

---

https://businessfilings.sc.gov/BusinessFiling/Entity/Profile/658540ab-c990-4860-b63c-5d4d4e86223e (last visited Feb. 27, 2023). However, BW filed for reinstatement on August 26, 2022, and is currently in good standing. *See id.* Under South Carolina law, "[w]hen the reinstatement [following administrative dissolution] is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." S.C. Code Ann. § 33-14-220(c).

**7. *Punitive Damages***

Finally, Bingham moves for summary judgment on KYC's claim for punitive damages. (Def.'s Mem. Supp. Mot. Summ. J. 1, 4). "[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton*, 913 F. Supp. 2d at 378-79 (citation omitted). Besides requesting summary judgment on this element of damages, however, Bingham does not substantively address his basis for seeking dismissal. (Def.'s Mem. Supp. Mot. Summ. J. 1, 3, 4). Likewise, KYC's cross-motion does not substantively address how it is entitled to summary judgment on this element of damages. Accordingly, the motions are denied on this basis.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment (DN 37) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff KY Closeouts, LLC is entitled to summary judgment on liability on its breach of contract claim against Defendant Eagle Trace, Inc. only.

2. Defendant's Motion for Summary Judgment (DN 56) is **GRANTED IN PART** and **DENIED IN PART**. Defendant Gary Bingham is entitled to summary judgment on Plaintiff KY Closeouts, LLC's claims for breach of contract and breach of the implied duty of good faith and fair dealing, and on the request to pierce the corporate veil.

3. Plaintiff's Cross-Motion for Summary Judgment (DN 62) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

March 31, 2023

cc: counsel of record