UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00212-GNS-HBB

KY CLOSEOUTS, LLC                                                    PLAINTIFF

v.

EAGLE TRACE, INC. d/b/a
THE BARGAIN WAREHOUSE, et al.                                       DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff's Motion for Summary Judgment on Damages
(DN 72), Defendant's Motion to Vacate (DN 74), and Defendants' Motion for Leave to Amend
(DN 75).  The motions are ripe for adjudication.

## I.        BACKGROUND

This action arises from a business transaction between Plaintiff KY Closeouts, LLC
("KYC") and Defendant Eagle Trace, Inc. d/b/a Bargain Warehouse ("BW") in the midst of the
COVID-19 pandemic.[1]  Following the pandemic's onset, there was a great need for personal
protective equipment ("PPE") for healthcare workers treating infected patients.  As part of the
transaction, BW advertised and solicited KYC's business for which BW would act as a broker to
obtain PPE, including nitrile gloves, for use by KYC's customers in the healthcare industry.
(Bryant Decl. ¶¶ 4-8, DN 62-1; Bryant Decl. Ex. B, DN 62-2).  According to KYC, BW
represented that it could obtain up to fifty million nitrile gloves per week from its sources around
the world for delivery in the United States.  (Bryant Decl. ¶ 8; Pl.'s Resp. Def.'s Mot. Summ. J.

---

[1] KYC alleges that Defendant Gary Bingham ("Bingham") "serves as the principal, president,
CEO and at least as the registered agent of BW."  (Compl. ¶ 5, DN 1).

Ex. B, at 2, 4, DN 63-2; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. D, at 2-4, DN 63-4).  In an email

sent on June 11, 2020, to Rebecca Bryant ("Bryant") at KYC, Bingham stated that he could

fulfill KYC's order with delivery to occur within three to five days.  (Pl.'s Resp. Def.'s Mot.

Summ. J. Ex. B, at 2).

On or about June 12, 2020, the parties entered into a contract under which KYC agreed to

purchase 90,000 boxes of nitrile gloves which were to arrive at BW's warehouse between June

16 and 19, 2020.  (Bryant Decl. ¶¶ 11-12; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. G, at 2, DN 63-7;

Pl.'s Resp. Def.'s Mot. Summ. J. Ex. D, at 2-3; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. L, at 2, DN

63-12).  On that same day, BW sent an invoice in the amount of $941,220, and KYC wired

$900,000 to BW.  (Bryant Decl. ¶ 11; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. E, at 2, DN 63-5;

Pl.'s Resp. Def.'s Mot. Summ. J. Ex. F, at 2, DN 63-6).  To acquire the PPE, BW then wired

$650,000 of the funds received from KYC and an additional $70,000 to a supplier in Italy.

(Bingham Dep. 190:6-14, DN 37-8).

Within days, KYC became concerned about whether BW was going to be able to fulfill

the order as promised.  (Bryant Decl. ¶¶ 17).  In an email to Bryant sent on June 13, 2020,

Bingham stated:

> I understand your concerns and yes there is a [sic] several scams out there in this
> world.  Fortunately for you and for me we are dealing with one of the most
> reputable companies in the business.  I have done several multi[-]million dollar
> deals with them without a single issue.  They are extremely large in the medical
> field and deal directly with the factories.

(Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 18).  The parties continued to communicate about the

order between June and December 2020.  (Bryant Decl. ¶¶ 21-24; Pl.'s Resp. Def.'s Mot. Summ.

J. Ex. I,- DN 63-9; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. J, DN 63-10; Pl.'s Resp. Def.'s Mot.

Summ. J. Ex. K, DN 63-11; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. L, DN 63-12; Pl.'s Resp.

Def.'s Mot. Summ. J. Ex. M, DN 63-13; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. N, DN 63-14).

BW repeatedly insisted that its efforts to fulfill the order were stymied by third parties including

its vendor in Italy.  (Bryant Decl. ¶ 24).  BW eventually refunded the sum of $250,000 to KYC,

but BW never provided the nitrite gloves to KYC as it promised.  (Bryant Decl. ¶ 25).

On December 22, 2020, KYC filed this action against BW and Bingham asserting claims

for fraudulent misrepresentation, breach of contract, conversion, unjust enrichment, and breach

of the duty of good faith and fair dealing, and requested that the Court pierce BW's corporate

veil to hold Bingham personally liable.  (Compl. ¶¶ 31-62).  After the parties filed dueling

summary judgment motions, the Court, *inter alia*, granted summary judgment in part for KYC

against BW on the breach of contract claim.  (Mem. Op. & Order 9-11, DN 69).  The Court

granted summary judgment for Bingham on KYC's claims against him for breach of contract and

breach of the implied duty of good faith and fair dealing, and on the request to pierce BW's

corporate veil.  (Mem. Op. & Order 11-12, 16-17).

BW has moved to vacate the Court's ruling on KYC's summary judgment motion, and

BW and Bingham have moved for leave to amend their Answer to assert the defense of

impossibility of performance.  (Def.'s Mot. Vacate 1-4, DN 74; Defs.' Mot. Leave Amend 1, DN

75).  KYC has moved for summary judgment on damages for its breach of contract claim.  (Pl.'s

Mot. Summ. J. Damages 1-6, DN 72).

## II.      **JURISDICTION**

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there

is complete diversity between the parties and the amount in controversy exceeds the sum of

$75,000.00.

### III.   <u>DISCUSSION</u>

#### A.   <u>Defendants' Motion to Vacate (DN 74)</u>

BW moves to vacate the Court's March 31, 2023, decision granting partial summary judgment in favor on KYC on its breach of contract claim against BW.  (Def.'s Mot. Vacate 1-4).   BW contends that "the Court's original judgment overlooked the defense of impossibility . . . , perhaps because it was in-artfully raised."  (Def.'s Mot. Vacate 1).

BW's motion is not well-taken.  (Pl.'s Combined Resp. Def.'s Mot. Vacate & Defs.' Mot. Leave Amend 1-9, DN 79).  While the term "impossible" is mentioned twice in BW's response to KYC's initial summary judgment motion, BW neither asserted the defense of impossibility in its Answer nor cited in its response any legal authority to support that defense.  (Def.'s Resp. Pl.'s Partial Mot. Summ. J. 6, 16, DN 49).  Because impossibility is an affirmative defense, BW had an obligation to assert such a defense in its Answer, and that defense was waived by its omission.  *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."); *Kellom v. Quinn*, 86 F.4th 288, 291-92 (6th Cir. 2023) ("[A] party forfeits a defense by failing to raise it in the answer."  (citing Fed. R. Civ. P. 12(b), (h); Fed. R. Civ. P. 8(c)(1); *Wood v. Milyard*, 566 U.S. 463, 470 (2012))).

BW has also failed to cite any authority establishing that the timely assertion of this defense would have impacted the Court's prior ruling.  Under Kentucky law, "[i]mpossibilities arising from the inability of the promisor to perform an act do not discharge the duty created by the contract[.]"  *Outfront Media, LLC v. LeMaster*, 399 F. Supp. 3d 671, 685 (E.D. Ky. 2019) (second alteration in original) (quoting *Raisor v. Jackson*, 225 S.W.2d 657, 659 (1949)); *see also Raisor*, 225 S.W.2d at 659 ("If a promise is conditioned upon the act or consent of a third person, the condition must be performed.  But the inability to control the actions of a third person, whose co-operation is needed for the performance of an undertaking, is ordinarily not to be regarded as

an impossibility avoiding the obligation.  One who engages for the act of a stranger must procure the act to be done, and the refusal of the stranger without the interference of the other party to the contract is no excuse.  The performance of an absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance."  (citation omitted)).

Even if properly raised, BW's defense of impossibility is devoid of merit.  Accordingly, BW has failed to show that the Court erred in granting summary judgment on KYC's breach of contract claim, and this motion is denied.

**B.    Defendants' Motion for Leave to Amend (DN 75)**

BW and Bingham also moved for leave to amend their Answer to assert the additional defense of impossibility of performance.  (Def.'s Mot. Leave Amend 1, DN 75).  Defendants, however, do not cite any authority supporting their motion, but seek to justify the proposed amendment as being supported by discovery.  (Def.'s Mot. Leave Amend 1; Def.'s Reply Mot. Leave Amend 1-3, DN 80).

Generally, Fed. R. Civ. P. 15 addresses how pleadings may be amended.  It provides that a party may amend a pleading as a matter of course one time within 21 days after serving the pleading or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(A)-(B).  Even after the time periods provided by the rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The more stringent standard under Fed. R. Civ. P. 16 applies where a party seeks to amend the pleadings after a Court-imposed deadline.  "Once the scheduling order's deadline passes, a [moving party] first must show good cause under Rule 16(b) for failure earlier to seek

leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In determining whether the moving party has shown good cause, a court considers: (i) whether the moving party has exhibited diligence in attempting to comply the schedule order's deadline; and (ii) whether the nonmoving party would be prejudiced if the amendment were permitted. *See Leary*, 349 F.3d at 909 (citations omitted); *see also Wilson v. Wal-Mart Stores E., LP*, No. 4:11-CV-00148-JHM, 2013 WL 2607113, at *4 (W.D. Ky. June 11, 2013) (applying the standard articulated in *Leary* and denying the defendant's motion to amend due to its failure to present evidence of diligence to comply with the scheduling order's deadline).

In this case, the Scheduling Order imposed a deadline of August 15, 2021, to amend the pleadings.[2] (Scheduling Order 2, DN 26). Defendants' motion does not address their diligence in failing to seek to amend their Answer within the proscribed period and waiting to file their motion until 22 months later. They have also failed to address any prejudice to KYC by this belated amendment—including that the time for fact and expert witness discovery long has passed. (Scheduling Order 2, 5-6). Accordingly, as the moving parties, BW and Bingham have failed to satisfy the requirements of Fed. R. Civ. P. 16(b)(4), and their motion is denied.

---

[2] The deadline for pretrial fact discovery was January 31, 2022. (Scheduling Order 2). Defendants likewise fail to explain why their motion was not made in closer proximity to that deadline to the extent that the amendment was necessary due to discovery. In their reply, Defendant attached discovery responses dated October 22, 2021, but their motion seeking leave to amend was not filed until June 17, 2023. (Defs.' Reply Mot. Leave Amend Ex., at 1, DN 80-1; Defs.' Reply Mot. Leave Amend Ex., at 1, DN 80-2).

**C.**   **Plaintiff's Motion for Summary Judgment on Damages (DN 72)**

In light of the Court's prior ruling on liability, KYC has moved for summary judgment on the issue of damages and requests an award of its recoverable costs.  (Pl.'s Mot. Summ. J. Damages 2-6).  BW opposes the motion.  (Def.'s Resp. Pl.'s Mot. Summ. J. Damages 1-4, DN 73).

**1.**   *Damages*

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the evidence must be viewed in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment.  *Anderson*, 477 U.S. at 252.

In support of its motion, KYC points to BW's responses to KYC's Requests for Admissions in which BW admits that KYC wired it the sum of $900,000 and that BW refunded only $250,000.  (Pl.'s Mot. Summ. J. Damages 2-3; Pl.'s Mot. Summ. J. Ex. 1, at 1-2, DN 37-2).  Similarly, in BW's response to KYC's Requests for Production, BW acknowledges that $900,000 was received and that it refunded $250,000 to KYC.  (Pl.'s Mot. Summ. J. Damages 2-3; Pl.'s Mot. Summ. J. Ex. 3, at 2, DN 37-4).

In opposing the motion, BW continues to assert that it is not liable for KYC's loss due to BW's inability to perform due to the actions of the third party.  (Def.'s Resp. Pl.'s Mot. Summ. J. Damage 2-3).  The Court, however, has already ruled to the contrary.  BW's response otherwise offers neither argument nor evidence controverting KYC's entitlement to recover its damages in the amount of $650,000.

"When, as here, the amount of damages can be determined from the pleadings, affidavits and submissions by the parties, the Court need not hold a separate hearing on damages and may enter judgment on damages based on the record."  *Great Plains Servs., Inc. v. K-VA-T Food Stores, Inc.*, No. 05-56-ART, 2008 WL 3077873, at *1 (E.D. Ky. Aug. 4, 2008) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).  Based on the evidence in the record, there is no genuine dispute of material fact that KYC incurred damages in the amount of $650,000 as a result of BW's breach of the contract.  KYC's motion is granted, and it is awarded damages against BW in the amount of $650,000.

### 2. *Pre- and Postjudgment Interest*

KYC requests both pre- and postjudgment interest.  (Pl.'s Mot. Summ. J. Damages 5-6).  "In a diversity case, state law governs an award of prejudgment interest . . . ."  *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 901 (6th Cir. 2007) (citing *Conte v. Gen. Housewares Corp.*,

215 F.3d 628, 633 (6th Cir. 2000)).  Postjudgment interest, however, is governed by federal law. *See F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000) (citing *Clissold v. St. Louis-S.F. Rwy. Co.*, 600 F.2d 35, 39 n.3 (6th Cir. 1979)).

"Under Kentucky law, if the claim is liquidated, [prejudgment] interest follows as a matter of right, but if it is unliquidated, the allowance of interest is in the discretion of the trial court."  *Poundstone*, 485 F.3d at 901 (quoting *Hale v. Life Ins. Co.*, 795 F.2d 22, 24 (6th Cir. 1986)); *see also Heartland Materials, Inc. v. Warren Paving, Inc.*, 384 F. Supp. 3d 786, 798 (W.D. Ky. 2019) (quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)).  As the Kentucky Supreme Court has explained:

> Precisely when the amount involved qualifies as "liquidated" is not always clear, but in general "liquidated" means "[m]ade certain or fixed by agreement of parties or by operation of law."  *Black's Law Dictionary* 930 (6th ed.1990).  Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price.

*Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 126, 141 (Ky. 1991) (alterations in original).  "A damages claim is liquidated if it is 'of such a nature that the amount is capable of ascertainment by mere computation, [or] can be established with reasonable certainty . . . .'"  *Ford Contracting, Inc. v. Ky. Transp. Cabinet*, 429 S.W.3d 397, 414 (Ky. App. 2014) (quoting *3D Enters.*, 174 S.W.3d at 450).

It is undisputed here that KYC paid the sum of $900,000 to BW, and BW refunded $250,000.  Because the amount owed to KYC by BW can be determined by mere computation, the amount of damages—$650,000—is liquidated, and KYC is entitled to recover prejudgment interest.  *See Heartland Materials*, 384 F. Supp. 3d at 799 ("[I]f damages are both undisputed and liquidated, prejudgment interest is payable as a matter of law."  (alteration in original)

(quoting *Barnett v. Hamilton Mut. Ins. Co. of Cincinnati*, No. 2009-CA-002234-MR, 2011 WL 43307, at *3-4 (Ky. App. Jan. 7, 2011))).

KRS 360.010 provides that the prejudgment interest generally accrues at the legal rate of 8% per annum. *See* KRS 360.010(1); *see also Fields v. Fields*, 58 S.W.3d 464, 467 (Ky. 2001) (noting the prejudgment interest rate is capped at 8% in KRS 360.010). Because none of the exceptions to that statute apply, KYC is entitled to recover prejudgment interest at a rate of 8% per annum from BW on the sum of $650,000.

As to postjudgment interest, 28 U.S.C. § 1961 "mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court." *Bricklayers' Pension Tr. Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982) (citing *Clissold*, 600 F.2d at 39 n.3; *Blair v. Durham*, 139 F.2d 260, 261 (6th Cir. 1943)). Accordingly, the Court awards KYC postjudgment interest pursuant to the terms and requirements of 28 U.S.C. § 1961.

### 3. *Costs*

Lastly, KYC requests its costs as part of the entry of judgment against BW. (Pl.'s Mot. Summ. J. Damages 5-6). Fed. R. Civ. P. 54(d)(1) permits a prevailing party to recover certain costs exclusive of attorneys' fees. As the Sixth Circuit has explained, this provision "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). "In order to award costs to a prevailing party, the court must determine that the expenses are allowable and that the amounts are reasonable and necessary." *Banks v. Bosch Rexroth Corp.*, 611 F. App'x 858, 860 (6th Cir. 2015) (citation omitted).

Under 28 U.S.C. § 1920, recoverable costs include:

> (1)    Fees of the clerk and marshal;
> (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3)    Fees and disbursements for printing and witnesses;
> (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5)    Docket fees under section 1923 of this title;
> (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  As one court has noted, "'[c]osts' are not to be equated with expenses.  They are (with limited exceptions) a term of art defined by 28 U.S.C. § 1920 . . . ."  *Abbott Labs. v. Granite State Ins. Co.*, 104 F.R.D. 42, 43 (N.D. Ill. 1984).

In its motion, KYC requests:  (i) clerk and marshal fees totaling $557.90; (ii) court reporter fees of $1575.50; and (iii) copy fees totaling $120.80.  (Pl.'s Mot. Summ. J. Damages Ex. A, at 2, DN 72-1).  BW has not objected, and under Section 1920, those costs are recoverable.

KYC also requests and postage and FedEx shipping costs totaling $149.59.  (Pl.'s Mot. Summ. J. Damages Ex. A, at 2).  In making that request, however, KYC has failed to explain how those costs are recoverable because they do not fall under the categories in 28 U.S.C. § 1920.  Courts in the Sixth Circuit have declined to tax postage or shipping costs, and this Court likewise declines to do so.  *See Barnes v. Lantech.com, LLC*, No. 3:18-CV-507-BJB-LLK, 2021 WL 5456990, at *2 (W.D. Ky. Nov. 22, 2021) (citing *Thalji v. TECO Barge Line*, No. 5:05-CV-226, 2007 WL 2827527, at *2 (W.D. Ky. Sept. 28, 2007); *Porter v. Caruso*, No. 1:05-CV-562, 2009 WL 1212808, at *2 (W.D. Mich. Apr. 30, 2009); *Aubin Indus., Inc. v. Smith*, No. 1:04-CV-681, 2009 WL 1674845, at *6 (S.D. Ohio June 15, 2009); *IMRA Am., Inc. v. IPG Photonics Corp.*, No. 06-15139, 2012 WL 6553523, at *2 (E.D. Mich. Dec. 14, 2012)).

IV.   **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motion for Summary Judgment on Damages (DN 72) is **GRANTED** in favor of Plaintiff KY Closeouts, LLC on its breach of contract claim against Defendant Eagle Trace, Inc. in the amount of $650,000.00, plus prejudgment interest at a rate of 8% and post-judgment interest at a rate of 4.81% pursuant to 28 U.S.C. § 1961.  The Clerk of Court is directed to tax Plaintiff's costs to Defendant Eagle Trace, Inc. in the amount of $2,254.20 as the prevailing party pursuant to 28 U.S.C. § 1920.

2.      Defendant's Motion to Vacate (DN 74) and Defendants' Motion for Leave to Amend (DN 75) are **DENIED**.

Greg N. Stivers, Chief Judge

United States District Court

January 4, 2024

cc:     counsel of record

12